# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Russell Dean Wilburn,
     Petitioner

vs                               Case No. 1:02cv860
                                  (Spiegel, J.; Hogan, M.J.)

Mark Houk,
     Respondent

---

## REPORT AND RECOMMENDATION

---

Petitioner, an inmate in state custody at the London Correctional Institution in Madison County, Ohio, brings this action pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition, respondent's return of writ and petitioner's traverse. (Docs. 1, 3, 6).

### Procedural Background

On August 23, 1982, the Lawrence County, Ohio grand jury indicted petitioner on one count of conspiracy to commit aggravated murder as defined in Ohio Rev. Code § 2923.01 and one count of kidnapping as defined in Ohio Rev. Code § 2905.01. (Doc. 3, Exs. 6, 7). Petitioner pled guilty to both charges. (Doc. 3, Exs. 8, 9). On October 25, 1982, the court sentenced petitioner to concurrent terms of four (4) to twenty-five (25) years for the conspiracy to commit aggravated murder and two (2) to fifteen (15) years for kidnapping. (Doc. 6,

Exs. 3, 4).

Petitioner did not file a timely appeal from his convictions or sentences. Indeed, he did not initiate any formal challenge to his convictions or sentences until nearly fourteen years later, when on September 19, 1996, he filed a pro se motion to vacate plea and sentence pursuant to Ohio Rev. Code § 2953.21 in the Lawrence County Common Pleas Court. (*See id.,* Ex. 17). In the petition, petition alleged he was denied effective assistance of counsel because his court-appointed attorney (1) failed to conduct pretrial discovery, which rendered petitioner's ultimate decision to plead guilty unknowing and involuntary; (2) misinformed petitioner of the indictment's charges and prevented him from ascertaining the nature of the charges against him by waiving the reading of the indictment at his arraignment; and (3) did not object to the trial court's failure during the plea-taking proceeding to advise petitioner of his right to be free from self-incrimination as required by Ohio R. Crim. P. 11. (*Id.*). On November 18, 1997, the Common Pleas Court issued "Findings Of Fact And Conclusions Of Law" addressing the merits of petitioner's post-conviction claims.[1] (*Id.,* Ex. 22). In its decision, the court determined that petitioner's trial counsel had provided effective assistance and that petitioner had "lawfully waived reading of the indictment." (*See id.*).

Petitioner appealed the trial court's decision to the Ohio Court of Appeals, Fourth Appellate District. (*Id.,* Doc. 23). On October 2, 1998, the Court of Appeals issued a Decision and Judgment Entry overruling petitioner's claims of error on the merits and affirming the trial court's judgment. (*Id.,* Ex. 26). After the Court of Appeals denied his motion to certify conflict (*see id.,* Exs. 27, 28), petitioner next filed a notice of appeal and memorandum in support of

---

[1]Earlier in the proceeding, on January 14, 1997, the Common Pleas Court issued a Judgment Entry denying the post-conviction petition based not on the merits of petitioner's claims, but rather on unrelated arguments raised by the State in response to the petition. (Doc. 3, Ex. 20). Petitioner attempted to appeal this order to the Ohio Court of Appeals, Fourth Appellate District, but the appeal was dismissed for lack of final appealable order due to the absence of findings of fact and conclusions of law. (*See* Doc. 3 at p. 5 n.2). Apparently, the appellate court suggested in its decision that the petition be resolved on the merits of petitioner's arguments rather than the State's unrelated arguments. (*See id.*). The matter was returned to the Common Pleas Court, where it appears the appellate court's suggestion was heeded by the trial court's issuance of its final decision in the matter on November 18, 1997.

jurisdiction with the Ohio Supreme Court. (*Id.,* Ex. 29). On January 20, 1999, the Ohio Supreme Court issued an Entry declining jurisdiction to hear the case and dismissing the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 31).

On October 30, 1998, after the Ohio Court of Appeals had issued its decision affirming the denial of post-conviction relief, but before the Ohio Supreme Court issued its final ruling in the matter, petitioner filed a pro se motion to withdraw his guilty plea in the Lawrence County Common Pleas Court. (*Id.,* Doc. 32). Petitioner argued that he should be allowed to withdraw his plea because (1) he was not afforded effective assistance by his court-appointed attorney, as demonstrated by documents tendered by his attorney to the trial court for payment of fees which indicate the written plea agreement was prepared three days before the indictment was returned by the grand jury; and (2) the "newly found affidavit" of the person who apparently committed the murder, Walter Riffe, showed petitioner was "actually innocent." (*See id.*). In addition, petitioner contended that the Ohio Parole Board had violated the terms and conditions of the plea agreement he had entered into with the State by lengthening the term of his imprisonment and continuing his consideration for parole beyond the expiration of the maximum sentence imposed by the trial court. (*Id.,* pp. 6-8).

On November 20, 1998, the Common Pleas Court entered a Judgment Entry denying petitioner's motion to withdraw his guilty plea. (*Id.,* Ex. 33). Petitioner appealed this decision to the Ohio Court of Appeals, Fourth Appellate District, which issued a Decision and Judgment Entry on December 22, 1999 overruling petitioner's assignments of error on the merits and affirming the trial court's judgment. (*Id.,* Exs. 34, 37). Petitioner attempted a further appeal to the Ohio Supreme Court. (*Id.,* Ex. 38). On March 1, 2000, the Ohio Supreme Court issued an Entry declining jurisdiction to hear the case and dismissing the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 40).

On July 7, 1999, petitioner filed his first federal habeas corpus petition (Case No. C-1-99-509, Doc. 3, Ex. 41). On November 24, 1999, this Court granted petitioner's motion to voluntarily dismiss the petition so that he could exhaust his state court remedies with respect to his motion to withdraw his guilty plea which was then pending before the Ohio Court of Appeals. (Doc. 3, Ex. 42).

The Court tolled the statute of limitations conditioned on petitioner's filing a renewed petition within thirty days after exhaustion. (Doc. 3, Ex. 42).

On March 24, 2000, petitioner filed his second federal habeas corpus petition. (Case No. C-1-00-228, Doc. 3, Ex. 43). As his first ground for relief, petitioner alleged that his guilty plea and resulting conviction are invalid because he was not informed by the trial court of his right not to incriminate himself. (*Id.*). In considering this issue, the Ohio Court of Appeals determined that the doctrine of *res judicata* barred consideration of this claim because petitioner could have raised the issue on direct appeal. (*See* Doc. 3, Ex. 44 at 9). Because petitioner still had the avenue of a delayed direct appeal open to him to have his claim heard by the state courts, this court declined to find that petitioner's procedural default waived consideration of the claim on habeas corpus review. (*Id.*). This Court once again dismissed the petition on exhaustion grounds, tolling the statute of limitations on the condition that petitioner exhaust his remedies with thirty days and return to the federal court within thirty days after exhaustion. (Doc. 3, Exs. 45, 46). [2]

On June 14, 2002, petitioner filed a motion for a delayed appeal to the Ohio Court of Appeals, raising the following assignments of errors:

1. Trial court committed error to the substantial prejudice of the appellant, violating appellant's Fifth and Fourteenth Amendment rights to due process and equal protection, and right to be free from self incrimination when the trial court failed to inform the appellant of his Fifth Amendment right during the criminal rule 11(C)(2) process, prior to accepting the appellant's guilty plea . . .

2. Trial court erred to the substantial prejudice of the appellant violating appellant's First, Fifth, Sixth and Fourteenth Amendment rights where the trial court failed to inform appellant as to his criminal rule 32 right to an appeal, right to counsel on direct appeal, right to have court documents provided without costs if appellant

---

[2]The Court dismissed the petition for the additional reason that petitioner failed to exhaust his remedies with respect to another claim for relief, but that claim is not involved in the instant petition. (*See* Doc. 3, Ex. 45 at p.10-11).

was indigent and could not afford such costs.

(Doc. 3, Ex. 12). On June 15, 2002, the Ohio Court of Appeals denied the motion because petitioner failed to show good cause for his untimely filing. (Doc. 3, Ex. 13).

Petitioner filed a timely appeal to the Ohio Supreme Court, raising the following propositions of law:

> 1. Criminal defendants who enter pleas of guilty are entitled to file delayed appeal, where sufficient reasons for the delay are substantial to demonstrate that a manifest miscarriage of justice will occur due to constitutional error.

> 2. Criminal Rule 32(B)(2) requires a trial court to inform criminal defendants who plead guilty of their right to file and appeal or seek leave to appeal.

(Doc. 3, Ex. 14). On October 2, 2002, the Supreme Court of Ohio declined jurisdiction and dismissed the appeal. (Doc. 3, Ex. 16).

Petitioner filed the instant petition for a writ of habeas corpus raising the following claims which are quoted verbatim, in pertinent part:

> Ground One: Petitioner's conviction was obtained by a failure to advise petitioner at trial of his right to be free from self-incrimination, pursuant to Criminal Rule 11 . . .

> Ground Two: Petitioner was denied the effective assistance of counsel when counsel induced petitioner to enter a guilty plea to the indictments where counsel had misrepresented the original charges as more onerous, failing to apprise petitioner of the true nature of the allegations against him.

> Ground Three: Petitioner was denied the effective assistance of counsel where counsel failed to conduct pre-trial discovery to have ascertained evidence that would demonstrate petitioner's actual

5

innocence, violating the First, Fifth, Sixth and Fourteenth
amendment rights to the United States Constitution.

Ground Four: Petitioner was denied due process and equal protection
of the law under the Fifth and Fourteenth Amendments to the United
States Constitution where his guilty plea was induced by counsel's
advice which was erroneous, allowing an innocent petitioner to be
convicted of a crime which he did not commit.

Ground Five: Petitioner was denied his right to file a timely appeal
pertaining to his guilty pleas where the trial court did not inform
petitioner that he had a right to timely appeal, the right to counsel for
purposes of appeal, and the right to documents necessary to file his
appeal if he could not afford to pay costs.

(Doc. 1).

In his return of writ, respondent argues that petitioner has waived his first
and fifth claims for relief due to  procedural defaults committed in the state courts
and that petitioner's remaining claims lack merit. (Doc. 3).

## OPINION

## I.  Petitioner's claim, asserted in his first ground for relief, is waived due to  a procedural default committed in the state court.

In his first ground for relief, petitioner asserts that he was denied due process
of law when the trial court failed to inform him of his right against self-incrimination
during the plea proceeding.

In recognition of the equal obligation of the state courts to protect the
constitutional rights of criminal defendants, and in order to prevent needless friction
between the state and federal courts, a state defendant with federal constitutional
claims must first fairly present those claims to the state courts for consideration
before raising them in a federal habeas corpus action.  *See* 28 U.S.C. § 2254(b)(1),
(c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v.
Connor,* 404 U.S. 270, 275-76 (1971).  A constitutional claim for relief must be

6

presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If petitioner fails to fairly present his claims through to the state's highest court or commits some other procedural default relied on to preclude review of the merits of petitioner's claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the petition is subject to dismissal with prejudice on the ground that petitioner has waived his claims for habeas corpus relief. *See O'Sullivan,* 526 U.S. at 847-848; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). If, because of a procedural default, petitioner has not had his claims considered by the state's highest court and he can no longer present his claims to the state courts, he has waived the claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

A "fundamental miscarriage of justice" occurs only in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995). To be credible, such a claim "requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup,* 513 U.S. at 324. In order to obtain habeas review of the merits of a procedurally-defaulted claim under the "actual innocence" exception, the otherwise-barred petitioner "must show it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of all the evidence, "including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Id.* at 327-28.

In this case, although petitioner did present this claim to the Ohio Court of Appeals in his motion for a delayed appeal, petitioner did not present the claim to the Ohio Supreme Court on direct appeal. Petitioner committed a procedural default by failing to present this claim to Ohio's courts on direct appeal. *See Leroy,* 757 F.2d at 97, 99-100. He has waived the claims for purposes of federal habeas corpus review because he did not provide the highest state court in Ohio with an opportunity to correct any alleged constitutional error. *See id.; see also Hughes v. Idaho State Bd. of Corrections,* 800 F.2d 905, 907-08 (9th Cir. 1986).

Therefore, this Court may not consider the claim unless he shows cause for the default and actual prejudice as a result of the alleged errors, or demonstrates that failure to consider the claims will result in a "fundamental miscarriage of justice." *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Petitioner has failed to establish "cause" for his procedural default in the state courts. Moreover, petitioner has not demonstrated his innocence such that a fundamental miscarriage of justice will occur if his procedurally-defaulted claim for relief is not addressed on the merits by this Court. Accordingly, the Court concludes that petitioner is not entitled to habeas corpus relief because he has waived his first ground for relief due to his procedural default in failing to fairly present his claim to the Ohio Supreme Court from the Ohio Court of Appeals' decision denying his delayed appeal.[3]

Assuming *arguendo* that petitioner had not waived the claim asserted in ground one, this Court would conclude that the decision of the Ohio Court of Appeals during post-conviction proceedings was a reasonable application of the Supreme Court precedent and a reasonable determination of the facts on the basis of the record evidence. *See* Section II.

---

[3]Petitioner presented this claim in his post-conviction proceedings but the Ohio Court of Appeals concluded that it was barred by the doctrine of *res judicata* because the claim should have been raised on direct appeal. (Doc. 3, Ex. 26 at 9-10). Although res judicata is an adequate and independent state law ground barring federal relief, *see Williams v. Bagley,* 380 F. 3d 932, 967 (6th Cir. 2004) and cases cited therein, *petition for cert. filed* (No. 04-8810) (U.S. Feb. 18, 2005), this Court declines to rely on the doctrine in this case because the transcript of the plea proceeding indicates that petitioner was not advised by the trial court of his right to an appeal.

In reviewing the trial court's denial of post-conviction relief, the Ohio Court of Appeals determined that even if this issue were not barred by the principles of *res judicata*, post-conviction relief would likely not be warranted.  (Doc. 3, Ex. 26).  The appellate court explained:

> It is true that the court below could have been more precise in its compliance with Crim. R. 11(C) and better apprised appellant of the full extent of the constitutional rights he would waive by pleading guilty. Nevertheless, we would be unable to definitively conclude that appellant did not subjectively understand the implication of his plea and the rights being waived.  He was fully informed of his right to trial and his right to have guilt proven beyond a reasonable doubt.  It was made clear to him that he had the right to call witnesses on his behalf and to cross-examine opposing witnesses.  Further when asked if counsel explained all his constitutional rights, and what might happen to him if he pled guilty, appellant responded in the affirmative.  The same response was given in his written statement of "proceedings on plea of guilty."  One could argue that all these factors demonstrate a "substantial compliance" with the criminal rule.  It is also arguable that there was no prejudicial effect from the trial court's mistake.  The transcript shows that appellant readily entered his guilty plea after being informed of all the other rights which he was waiving.  It is difficult to believe that his decision would have been otherwise once he was informed that he would not be compelled to give testimony against himself.

(*Id.* at p.10-11).

Because a criminal defendant waives numerous constitutional rights when he enters a plea of guilty, the plea must be entered into knowingly and voluntarily in order to comply with the Due Process Clause.  *Boykin v. Alabama*, 395 U.S. 238, 244 (1969).  "'The standard was and remains whether the plea represents the voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  *Sparks v. Sowders*, 852 F.2d 882, 885 (6th Cir. 1988) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  In applying this standard, a court must look at the totality of the circumstances surrounding the plea.  *Brady v. United States,* 397 U.S. 742, 749 (1970).

The Sixth Circuit has held both that *Boykin* does not require the enumeration of each right waived when a guilty plea is entered and specifically that a trial court's failure to advise a defendant of the right against self-incrimination does not preclude a determination that the plea was intelligent and voluntary. *See United States v. Gonzalez-Ramirez,* 59 Fed.Appx 36, *37-39 (6th Cir.), *cert. denied,* 539 U.S. 921 (2003); *United States v. Murphy,* No. 97-1729, 1999 WL 107683, at **2-3 (6th Cir. Feb. 11, 1999) and cases cited therein.

Where a defendant has been advised that by pleading guilty he is waiving his right to a trial by jury and right to confront witnesses, as was done in the instant case, "a ritualistic question to a defendant asking if he understands that he is waiving his right against self-incrimination" is unnecessary. *United States v. Henry,* 933 F.2d 553, 559 (7th Cir. 1991) (quoting *United States v. Dorszynski,* 484 F.2d 849, 851 (1973), *rev'd on other grounds,* 418 U.S. 424 (1974)), *cert. denied,* 503 U.S. 997 (1992).

Based on the findings of fact of the Ohio Court of Appeals and this Court's review of the plea proceeding, this Court concludes that the plea was knowing and voluntary, despite the trial court's failure to specifically refer to petitioner's right against self-incrimination.

## II. Petitioner is not entitled to habeas corpus relief with respect to his claims of constitutionally ineffective assistance of counsel, as asserted in grounds two, three and four of the petition.

In his first, second and third grounds for relief petitioner argues that counsel was constitutionally ineffective.

Under the standard established by the Antiterrorism and Effective Death Penalty Act (AEDPA), codified principally at 28 U.S.C. § 2254 (d), petitioner is not entitled to federal habeas corpus relief, unless the state court's adjudication of his claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir.

2000), *cert. denied*, 532 U.S. 947 (2001); *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06 (O'Connor, J.); *Harris*, 212 F.3d at 942.

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 407-08 (O'Connor, J.). A federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also McGhee v. Yukins*, 229 F.3d 506, 510 (6th Cir. 2000); *Harris*, 212 F.3d at 942. The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams*, 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer*, 228 F.3d 689, 698 (6th Cir. 2000); *Harris*, 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee*, 229 F.3d at 510, 512 (citing *Williams*, 529 U.S. at 412).

When a state court fails to address the constitutional issues raised the federal court conducts a de novo review, instead of applying the AEDPA standard of review which applies only to cases "adjudicated on the merits in state court." *Maples v. Stegall*, 340 F.3d 433, 436-437 (6th Cir. 2003) (finding that in *Wiggins v. Smith*, 539 U.S. 510 (2003), Supreme Court reviewed portion of claim not analyzed by state court de novo, without deferring to the state court or applying AEDPA's standard of reasonableness); *see Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *Davis v. Secretary for the Dep't of Corrections*, 341 F.3d 1310, 1312 (11th Cir. 2003).

To demonstrate that counsel's performance was constitutionally ineffective,

11

petitioner must show: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner made an insufficient showing on either ground. *See id.* at 697.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *See id.* at 688. Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. *Id.* at 689. In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See id.*

In order to satisfy the "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different. *See id.* at 694. A showing by petitioner that the alleged errors had "some conceivable" effect on the outcome of the proceeding is insufficient to meet this standard. *See id.* at 693. However, by the same token, petitioner need not demonstrate that his counsel's conduct "more likely than not" altered the outcome of the proceeding to establish prejudice. *See id.* Petitioner has met his burden if he shows that the decision reached would "reasonably likely have been different absent the errors." *See id.* at 695.

The two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 686 (1984), applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir. 1988). In order to obtain relief, a prisoner who is challenging the entry of his guilty plea on the basis of counsel ineffectiveness must first show that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. *Hill v. Lockhart*, 474 U.S. at 59; *Sparks v. Sowders*, 852 F.2d at 884.

The second, or "prejudice" requirement on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill v. Lockhart*, 474 U.S. at 59; *Sparks v. Sowders*, 852 U.S. at 884.

Petitioner alleges that his counsel was constitutionally ineffective for representing that petitioner was charged with aggravated murder, as opposed to the actual charge of conspiracy to commit aggravated murder. Petitioner represents that he was illiterate and could not read the indictment. Because counsel waived the reading of the indictment, petitioner claims that he was unaware that he was only charged with conspiracy. He further argues that his fear of the death penalty for aggravated murder induced his plea.

In reviewing petitioner's post-conviction claims, the Ohio Court of Appeals concluded:

> We are equally unpersuaded that the nature of the crimes with which he was charged were misrepresented to appellant. Again, in the signed statement of "proceedings on a plea of guilty," it is clearly set forth that he was charged with violation of R.C. 2923.01 and R.C. 2905.01. The transcript of the September 10, 1982 hearing also reveals that the trial court explained the elements of these charges to him. Appellant was later asked whether he had any questions for the court before entering a plea and he responded in the negative. The Court then asked him whether he still wished to enter a plea of guilty to these charges and he responded in the affirmative. All things considered, the record indicates that there was no coercion or misrepresentation made to induce a guilty plea. Appellant has submitted nothing to rebut the record on these points other than his affidavit and verified petition which, as stated about, could be properly disregarded by the trial court.

(Doc. 3, Ex. 26 at 7).

It does appear that before the indictment was issued and on the matter of appointment of counsel, the trial court advised petitioner that he was charged with aggravated murder.[4]  (Doc. 3, Ex. 9, Tr. 2). However, after the issuance of the indictment, petitioner was informed in open court on numerous occasions that the charge was conspiracy to commit aggravated murder.  (Doc. 3, Ex. 9, Arraignment, Tr. 7; Guilty Plea Hearing, Tr. 5, 6, 10).  In addition, petitioner specifically testified that he was not coerced into taking the guilty plea and was making the plea on his own free will.  (Doc. 3, Ex. 9, Guilty Plea Hearing, Tr. 4, 8).

Since there is no evidence on the record that counsel misrepresented the charge and in any event, petitioner was made aware of the offenses in the indictment by the trial court, petitioner has failed to show that counsel was incompetent or that he was prejudiced by the alleged misrepresentation.

This Court concludes that the decision of the Ohio Court of Appeals during post-conviction proceedings was a reasonable application of the Supreme Court's decision in *Strickland v. Washington* and a reasonable determination of the facts on the basis of the record evidence.

In ground three of the petition, petitioner argues that his counsel failed to conduct discovery to demonstrate his innocence.  The Ohio Court of Appeals addressed his claim as follows:

> As for appellant's claim that counsel was ineffective for never having conducted any discovery, we reject this for several reason.  First, he never clearly delineates in his petition what (if any) exculpatory evidence was even discoverable.  Second, his guilty plea constituted a complete admission of guilt pursuant to Crim R. 11(B)(1) and was tantamount to stating that there was no exculpatory material to be

---

[4]In ruling on his motion to withdraw the guilty plea, the trial court found:

[W]hile the case was pending in the municipal court for preliminary hearing and prior to formal indictment, the defense counsel worked diligently to have the charges reduced from aggravated murder to a conspiracy charge . . .

(Doc. 3, Ex. 33 at 1). Rather than misrepresent the charge, defense counsel attempted to sway the prosecution to indict on a lesser charge which he did.

discovered.  We would also point out that, at the September 10, 1982, hearing the trial court expressly asked if there was any competent evidence to show that appellant was not guilty.  Defense counsel answered in the negative and appellant said nothing.  Here again if there was any exculpatory evidence, the onus was on appellant to come forward and indicate that to the trial court.  He failed to do so and thus, even if counsel's performance was deficient in this regard, we fail to see how appellant was prejudiced as required under the aforementioned *Strickland* standard for determining ineffective assistance of counsel.

(Doc. 3, Ex. 26 at 7).

By pleading guilty, a defendant waives all non-jurisdictional defects in the proceedings.  *United States v. Pickett,* 941 F.2d 411, 416 (6th Cir. 1991).  "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."   *Tollett v. Henderson,* 411 U.S. 258, 267 (1973); *see McMann v. Richardson,* 397 U.S. 759, 768-69, 771 (1970); *Campbell v. Marshall,* 769 F.2d 314, 318-19 (6th Cir. 1985), *cert. denied,* 475 U.S. 1048 (1986).  Rather, he may only seek to attack the validity of his guilty plea by showing that under the circumstances, his guilty plea was not intelligently and voluntarily entered.  *Id.*; *see also Campbell,* 769 F.2d at 315.

Petitioner's claim that trial counsel was ineffective because he failed to conduct discovery  relates to deprivations of constitutional rights occurring before petitioner entered his guilty plea.  By entering a valid guilty plea, petitioner waived this claim.  This Court concludes that the decision of the Ohio Court of Appeals during post-conviction proceedings comported with Supreme Court precedents and constituted a reasonable determination of the facts on the basis of the record evidence.[5]

In petitioner's second, third and fourth grounds for relief petitioner argued that trial counsel was constitutionally ineffective for not revealing to petitioner that his

---

[5]At this point in time, petitioner was allegedly unaware that his co-defendant stated that petitioner was not involved in the conspiracy or kidnapping.

co-defendant testified at the preliminary hearing that petitioner was not involved in the conspiracy or kidnapping. He argues that if he had known that his co-defendant exculpated him, he would not have entered his guilty plea. Petitioner further asserts that counsel induced the plea by keeping this information from him.

Although not specifically addressing this instance of attorney error, in the post-conviction proceedings, the Ohio Court of Appeals rejected petitioner's contention that counsel was ineffective. (Doc. 3, Ex. 26 at 3-8). In the proceedings relating to petitioner's motion to withdraw his guilty plea where petitioner raised the issue of his co-defendant's testimony, the Ohio Court of Appeals relied on that prior finding and further expressed its concern about the reliability of Mr. Riffe's statements. (Doc. 3, Ex. 37 at 4-5).

There is no evidence in the record to support petitioner's assertion that his co-defendant testified at the preliminary hearing that petitioner was not involved in the offenses. Neither petitioner nor respondent were able to secure a transcript of the preliminary hearing and apparently one does not exist. Moreover, although petitioner attached an affidavit of his co-defendant, Walter Riffe, stating that petitioner was not involved in planning the murder, the affidavit fails to state that Mr. Riffe testified to that effect at the preliminary hearing. (Doc. 3, Ex. 32, Affidavit of Walter Riffe). The Ohio Court of Appeals upheld the trial court's ruling to deny petitioner's motion to withdraw his guilty plea on the basis of the Riffe affidavit explaining:

> As the trial court noted, the statement of a co-conspirator should always be viewed with great trepidation by a court or jury. Hence the affidavit, coming some sixteen years after appellant's guilty plea, and unsupported by any other evidence, was clearly insufficient to justify a hearing.

(Doc. 3, Ex. 37 at 5). In his affidavit, Mr. Rife fails to state that he would have been willing to testify on behalf of petitioner at trial and forego his right not to testify at what would likely have been a joint trial. (Doc. 3, Ex. 32, Affidavit of Walter Riffe). In any event, the state had overwhelming evidence against petitioner. The state trial court found that "the evidence shown to the Court was so overwhelming against the Defendant that nothing counsel could have done would have changed the course of the case." (Doc. 3, Ex. 22 at 4).

Because there is no evidence that Mr. Rife testified favorably at the preliminary hearing and furthermore that he would have done the same at petitioner's trial and because his testimony was suspect, in any event, and the state's evidence was strong, petitioner has failed to establish that trial counsel was remiss in failing to inform him that petitioner exonerated him at the preliminary hearing. Petitioner has not shown that there is a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial.

In addition, there is no basis to conclude that petitioner was coerced into accepting the guilty plea by counsel's failure to inform him of Mr. Riffe's statements. Petitioner testified at the plea hearing that there was no coercion involved. (Doc. 3, Ex. 9, Tr. 4, 8). In addition, the plea bargain produced a favorable result for petitioner. As part of the plea bargain and in exchange for his cooperation in implicating his co-defendant, the state recommended the minimum sentence and the court followed the recommendation. (Doc. 3, Ex. 9 , Sentencing Hearing at 5).

The Ohio Court of Appeals decisions upholding the trial court's denial of post-conviction relief and the trial court's denial of petitioner's motion to withdraw his guilty plea represent a reasonable application of Supreme Court caselaw and a reasonable determination of the facts in this case. Accordingly petitioner is not entitled to habeas corpus relief on the basis of his claim that trial counsel was constitutionally ineffective for not revealing to petitioner his co-defendant's allegedly exculpatory testimony at the preliminary hearing, asserted in his second, third and fourth grounds for relief.

### III. Petitioner is not entitled to habeas corpus relief with respect to his fifth claim that he was denied a right to an appeal.

As his fifth claim for relief, petitioner argues that he was denied his right to appeal because the trial court failed to inform him of his right to an appeal, to appellate counsel and to relevant documents to support the appeal.

When petitioner raised this issue in his motion for a delayed appeal, the Ohio Court of Appeals determined that petitioner did not meet his burden of showing good cause for failing to file a timely appeal pursuant to Ohio App. R. 5(A). (Doc. 3, Ex. 13 at 2-3). In support of the ruling, the state court indicated that Crim. R. 32 does

not require notice of a right to an appeal by the court after a guilty plea and that petitioner was aware of his right to a delayed appeal in 1984, as evidenced by a letter he sent to the public defender,[6] but failed to pursue this remedy for eighteen years from that time. (*Id*.). The state appellate court also noted that after his conviction, petitioner pursued state collateral relief and an appeal, as well as federal habeas corpus relief. (*Id*.).

As a constitutional matter, this Court has held that a petitioner is denied due process of law when the state trial court and counsel fail to inform him that he has a right to an appeal after a guilty plea, he is otherwise unaware of that right, and the state court denies him a delayed appeal. *See, e.g., Anthony Wolfe v. Michael Randle,* Case No. C-1-00-410 (S.D. Ohio 2003)(Doc. 23); *see generally Evitts v. Lucey,* 469 U.S. 387, 393 (1985). In this case, however, petitioner has had all of his claims considered by the Ohio Court of Appeals through his appeal of the trial court's denial of post-conviction relief and the trial court's denial of petitioner's motion to withdraw his guilty plea. The remedy for the denial of a right to an appeal is essentially to order the state to release petitioner unless it grants him a delayed appeal. In this case, that remedy would be senseless because the Ohio Court of Appeals has considered all of petitioner's claims on the merits and rejected them, as has this Court.

Because this claim is essentially moot, this Court declines to grant habeas corpus relief with respect to petitioner's fifth ground for relief.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED with prejudice.

2. A certificate of appealability should not issue with respect to the dismissal

---

[6]The public defender declined to pursue a delayed appeal because if he were successful in vacating the guilty plea, petitioner would likely have received a heavier sentence. (Doc. 6, Ex. C). He opined that the incriminating statements petitioner made during the plea negotiations coupled with the state's other evidence would make his conviction "nearly certain." (*Id*.). He concluded that an appeal of the conviction would therefore "be of no advantage." (*Id*.)

on procedural default grounds of the claim for relief alleged in ground one because "jurists of reason would not find it debatable whether this Court is correct in its procedural ruling" as required under the first prong of the two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), which is applicable to procedurally-barred claims.[7] A certificate of appealability should not issue with respect to petitioner's remaining grounds for relief because petitioner has failed to make a substantial showing of the denial of a constitutional right remediable in this federal habeas corpus proceeding. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). Petitioner has not shown that reasonable jurists could debate whether these claims should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 323-324 (2003) (quoting *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000)) (in turn quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore DENY petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 4/13/05
hr

Timothy S. Hogan
United States Magistrate Judge

J:\ROSENBEH\2254(2005)\02-860org.wpd

---

[7]Because this Court finds petitioner has not met the first prong of the *Slack* standard, it need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether ground one states a valid constitutional claim. *See Slack,* 529 U.S. at 484.

19

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Russell Dean Wilburn,
      Petitioner


vs                                      Case No. 1:02cv860
                                             (Spiegel, J.; Hogan, M.J.)

Mark Houk,
      Respondent

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action.  Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.  Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s).  Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  *See* Fed. R. Civ. P. 72(b).  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474  U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by ( Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:          ☐ No

1. Article Addressed to:

Russell Dean Wilburn
6920 Berdelle Ave
Cleveland, OH 44105

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)       7002 0860 0000 1410 1695

PS Form 3811, August 2001     Domestic Return Receipt     102595-02-M-1540

1: 02 cv 860 doc.#11